IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


JEFFERY L. POPE,

    Plaintiff,

vs.                                       Case No. 4:04cv168-WS/WCS

OFFICER SAMUEL MASON,

    Defendant.

                                     /


## REPORT AND RECOMMENDATION

This is a prisoner civil rights case alleging the use of excessive force in violation of the Eighth Amendment. Defendant Samuel Mason filed a special report in response to the *pro se* Plaintiff's fourth amended civil rights complaint,[1] Doc. 54. The special report, containing numerous pages of exhibits, was construed as a summary judgment motion, (now re-docketed as doc. 56), and Plaintiff was advised of his obligation to respond to the motion. Doc. 55. Plaintiff has filed a response in opposition, doc. 58, and a supporting affidavit, doc. 57. The motion is ready for a ruling.

---

[1] Plaintiff had difficulty in submitting an identical service copy of his complaint. *See* doc. 44 for greater explanation. Ultimately, what was submitted to the Court as a service copy of Plaintiff's third amended complaint, doc. 25, was served on Defendant and is more properly considered Plaintiff's fourth amended complaint. This document, filed as doc. 43, is the active version of Plaintiff's complaint.

**Allegations of the complaint**

Plaintiff alleges that on November 16, 2003, while housed in the West Unit of Lake Butler's Medical center, he was written a disciplinary report for committing lewd sexual acts by Officer Tama Mason, the wife of the Defendant in this case. Doc. 43, p. 7.

Plaintiff alleges that he was transferred back to the Main Unit at Lake Butler and placed in confinement pending his disciplinary hearing. *Id.* Plaintiff alleges that he had the disciplinary hearing for this charge and then, on November 28, 2003, was moved to disciplinary confinement. *Id.*, at 8.

Plaintiff alleges that the following day was a Friday. *Id.* It was not.[2] On this "following day," Plaintiff alleges that he was awakened by an officer at approximately 4:30 a.m., and told to get dressed for a medical call-out. *Id.* Plaintiff was handcuffed with his hands behind his back and taken to a holding cell inside K-dorm. *Id.* In a few minutes, Defendant Officer Mason came into the holding cell with Plaintiff and asked if Plaintiff knew that Officer T. Mason was his Defendant. *Id.* Plaintiff replied that he did not know that, when Defendant Mason and the other officer suddenly grabbed Plaintiff. *Id.*, at 8. Defendant Mason struck Plaintiff in the face, then grabbed Plaintiff's neck and began bumping Plaintiff's head against the wall. *Id.* Defendant Mason then threatened Plaintiff, telling him if he was ever disrespectful to his wife again, he would kill him, and then used a derogatory racial term and expletive. *Id.*

---

[2] It is judicially noted that November 28, 2003, was a Friday.

Case No. 4:04cv168-WS/WCS

Beyond the excessive force claim, Plaintiff also asserts state law claims for assault and battery and distress. *Id.*, at 9. Plaintiff seeks a declaratory judgment and compensatory damages of one hundred thousand dollars. *Id.*, at 10.

**Legal standards governing a motion for summary judgment**

When a defendant files a motion for summary judgment, the defendant has the initial burden to demonstrate an absence of evidence to support the plaintiff's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). Thereafter, the burden shifts to the plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v.

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**Evidence from the special report, doc. 54**

Defendant Samuel Mason is employed by the Department of Corrections as a correctional officer and works at the Reception and Medical Center [hereinafter "RMC"] in Lake Butler, Florida.  Doc. 54, p. 1.  Officer Tama Mason, not the Defendant, was working in the C-dormitory of RMC on November 16, 2003.  *Id.*, at 2; ex. F, p. 2.[3]  At approximately 6:45 a.m. on November 16th, Plaintiff committed an obscene or profane act (masturbating) while staring at Officer T. Mason.  *Id.*; doc. 54, ex. C.[4]  She wrote Plaintiff a disciplinary report charging him with violating Rule 9-1, Obscene or Profane Act.  Doc. 54, p. 2.

Plaintiff had a health appraisal conducted before being sent to confinement at approximately 7:00 a.m. on November 16th.  Ex. D, p. 2.  Plaintiff voiced no complaints or advised of any injury during this examination.  *Id.*  After the pre-confinement

---

[3] The record of Plaintiff's internal movements reveal he was in C-dormitory in cell C1105U from October 28, 2003, until he was moved on November 16, 2003 to K-dormitory, administrative confinement.  Ex. F, p. 2; doc. 54-3, p. 10 (pagination on electronic docket).  He was then moved to disciplinary confinement in K-dormitory on November 21, 2003.  *Id.*

[4] All references to exhibits are to those attached to document 54, the special report.

examination, Plaintiff was placed in administrative confinement in the K-dormitory of the Main Unit at RMC. Doc. 54, at 3; ex. K, p. 2. Plaintiff was assigned to bunk K1210L in the K-dormitory. Ex. E, pp. 2, *et seq*, ex. F, p. 2.

At approximately 10:00 p.m. on November 16th, Ms. Diana Pope called Captain Crawford and said she had received information that Plaintiff had been brutally beaten by officers at the institution. Doc. 54, at 3; Ex. G, p. 1. Captain Crawford had Plaintiff escorted to the emergency room at the institution for a physical examination and questioning. Doc. 54, at 3.

During the questioning, Plaintiff alleged that a sergeant kicked him in the jaw and elbow at around 7:00 a.m. while he was in C-dorm at the West Unit of RMC. *Id.*, at 3. The examining physician did not find bruising, redness, swelling, or bleeding, but noted Plaintiff claimed that his left elbow hurt and he reported tenderness. *Id.*, at 3-4; ex. D, p. 3. The physician indicated on the "Diagram of Injury" form that no injury was identified. Ex. D, p. 4. The Inspector General's Office conducted an investigation into this alleged incident of physical abuse, but when Plaintiff refused to be interviewed or cooperate in the investigation, the case was downgraded and closed. Doc. 54, p. 4; Ex. G, p. 4; Ex. H, p. 1.

Plaintiff's disciplinary hearing was held on November 21, 2003, and Plaintiff pleaded guilty to the charge. Doc. 54, p. 5; ex. C, p. 3. He was sentenced to thirty days in disciplinary confinement, and remained in the K-dormitory to serve out the penalty. *Id.* Plaintiff was moved, however, from administrative confinement to a disciplinary confinement cell, and the records show he was in cell K2107U as of November 21, 2003. Ex. F, p. 2.

On November 25, 2003, Plaintiff reported to sick call, complaining of problems with his left eye and jaw and alleging these problems were present since November 16, 2003, when he was allegedly assaulted. Doc. 54, p. 5. The nurse noted Plaintiff was not in any "visible distress," but referred Plaintiff to the physician. Ex. D, p. 5. Plaintiff was examined by a doctor approximately an hour later and told the doctor he had been kicked on his left eye and jaw by security on November 16, 2003, and that the vision in his left eye was worse. Doc. 54, p. 5; ex. D, p. 6. The doctor noted that Plaintiff had been shot and the bullet was retained behind the left eye. *Id.* Plaintiff reported that his left eye is always worse than his right eye. *Id.* Plaintiff was given a vision examination, and the doctor noted that Plaintiff's bilateral eye movement was normal, pupils were equal, and there was no blood in the anterior chamber. *Id.* Plaintiff jaw was also examined and there were no signs of bruising or a fracture. *Id.*

On the following day, November 26th, Plaintiff was seen in the mental health clinic. Ex. D, p. 6. He had three more visits for mental health treatment on December 3, 2003, December 8, 2003, and December 15, 2003. *Id.; see also* p. 10.

On November 28, 2003, Defendant S. Mason worked the "first shift," which is the midnight to 8:00 a.m. shift in the K-dormitory. Doc. 54, p. 6; Ex. I, p. 1. It is customary for the officers working that first shift to receive a list "containing the names of inmates who are scheduled for medical call-outs or transfers that day." Ex. I, p. 1. At approximately 4:00 a.m., two security officers go to each of the listed inmates' cells and escort them to holding cells. *Id.* The holding cells "are located in a central area of the dorm near the officers station." *Id.* "Unlike in the open population dormitories, two officers must always be present when an inmate in a confinement dormitory is removed

from his cell and handcuffed." *Id.* Occasionally, one officer may escort an inmate to the holding area after being handcuffed and removed from his cell, but it is common for "both officers to escort the inmate and stop along the wing to gather other inmates that are scheduled for medical call-outs or transfers and then escort the inmates as a group to the holding area." *Id.,* at 1-2.

Inmates are kept in holding cells until time to escort them across the compound. *Id.*, at 2. The holding cells, which are located in a central area of the dormitory, have only "one concrete wall and three barred sides." *Id.* Thus, any activity inside a holding cell can be easily seen from outside the cells through the bars. *Id.* There are also "curved security mirrors throughout the dormitory that enable observation of the holding cells from various angles." *Id.*

Defendant Mason submitted an affidavit in which he testifies he is "certain that [he] never punched inmate Pope in the face or choked him and banged his head against a wall as he alleges in his complaint." Ex. I, p. 2. Defendant Mason further explains his certainty because he states he has "never struck, choked, slapped, or punched any inmate." *Id.* Defendant also asserts that if he had placed his hands on the Plaintiff, he "would have completed a use of force report and would have used only such force as necessary to restrain disorderly or assaultive conduct or to quell a disturbance." *Id.* No use of force report was completed on November 28, 2003, by Defendant Mason. *Id.*

There are no records in the Department of Corrections to show that Plaintiff reported this incident to prison officials in November or even December of 2003. Doc. 54, p. 7. Plaintiff did not seek medical treatment for any injuries related to this alleged

event.  *Id.; see also* Ex. D.  Plaintiff did, however, have numerous medical appointments throughout the month of December, but never mentioned the alleged beating by Defendant Mason or any injuries resulting there from.  Doc. 54, p. 7; *see* Ex. D.  The medical records contain nothing which would indicate Plaintiff had bruises, swelling, abrasions, or any injury to his face or neck.  Doc. 54, pp. 7-8.

Plaintiff was transferred from RMC to Liberty Correctional Institution on December 16, 2003.  Ex. D, p. 11; ex. F, p. 3.  Plaintiff voiced no complaints about medical problems, or treatment at RMC.  *Id.*, at 11-13.

On February 3, 2004, Plaintiff submitted a grievance to the Office of Secretary alleging that on November 16, 2003, an unnamed sergeant and another officer assaulted him while he was still at the West Unit of RMC.  Ex. K, p. 1.  He said he never found out their names.  *Id.*, p. 3.  He also alleged that after he arrived at K-dormitory at the Main Unit of RMC, on Friday, November 28, 2003, he was assaulted by Officer Samuel Mason.  *Id.*  The allegations of fact concerning this assault are the same as in this complaint.

The grievance was referred to the Office of the Inspector General for investigation.  Doc. 54, p. 9; ex. K, p. 2.  Plaintiff provided an affidavit during that investigation to support his claims.  Ex. L, p. 3.  However, Plaintiff had no witnesses to corroborate his allegations, and no documented evidence of any injury since Plaintiff did not report anything sooner.  Ex. L.  The investigator confirmed that Plaintiff received a disciplinary report from Officer T. Mason on November 16, and confirmed that this officer is the wife of Defendant S. Mason.  Doc. 54, p. 11.  However, the investigator noted a conflict in Plaintiff's affidavit in that Plaintiff was already housed in K-dormitory

since November 16th and did not have to be taken there on November 28th as he alleged. Doc. 54, p. 10; ex. L, p. 3. Ultimately, the inspector concluded that Plaintiff's complaint was unfounded and the investigation was closed. Doc. 54, p. 12.

In particular, it was noted that during this time period, Plaintiff was being examined by medical personnel and had already reported an earlier claim of abuse. Doc. 54, p. 12; ex. L, p. 4. That claim of abuse was downgraded due to Plaintiff's refusal to assist the inspector in the investigation. Ex. L, p. 4. In this investigation, it was noted that Plaintiff had numerous opportunities to present his allegations but did not do so. *Id.* The investigator determined Plaintiff's claims were brought "to cause undue scrutiny on" Defendant Mason and his wife, Officer Tama Mason. *Id.* However, this conclusion was based in part on the investigator's erroneous finding that Plaintiff's allegations concerned an event on November 28, 2003, which the investigator noted was a Thursday. Ex. L, p. 4. The investigator found that neither Defendant Mason nor his wife worked on Thursday. *Id.* As explained above, November 28th was a Friday.

**Plaintiff's evidence, doc. 57**

Plaintiff has provided an affidavit of another inmate, Tracy Freeman. Freeman provides eye witness evidence concerning the first assault, but was not a witness to the second assault which is the basis of Plaintiff's claim against Officer Samuel Mason. Freeman does state, however, that he heard Officer Tama Mason say that Plaintiff was "in big trouble once he gets to K-dormitory at the main unit when she tells her husband what Jeffery Pope did – that Pope did her wrong and her husband would straighten him out." Doc. 57, p. 2.

Plaintiff, however, has not provided his own affidavit giving specific details, under oath, as to what he asserts happened at K-dormitory. He has provided what he has styled a "motion in opposition to summary judgment." Doc. 58. While that document is under oath, it primarily contains legal argument. Plaintiff has a section labeled "statement of undisputed facts," but this is simply a description of his complaint. Doc. 58, p. 1. In the course of describing his complaint, Plaintiff states:

> Following thereafter [after the first alleged beating], Plaintiff alleged that c/o S. Mason, beat him up while in confinement – containing all facts and matters therein.
>
> Plaintiff maintains the truth of his allegations inclusive to Tracy Freeman's statement – reinforcing his claim as of evidentiary material demonstrating a genuine issue of fact for trial.

*Id.*, p. 2.

**Analysis**

In summary, the evidence is one-sided. Defendant has provided evidence to show that he did not assault Plaintiff in any manner in November of 2003. There is evidence showing that on November 16, 2003, Plaintiff did raise a claim that two officers assaulted him prior to his being taken to confinement pending resolution of the disciplinary report issued by Officer T. Mason. Accordingly, Plaintiff knew how to make such a report and was not afraid to do so. The evidence also reveals that Plaintiff was seen numerous times by medical personnel in December, 2003, and could have made a report of injuries and the assault. Plaintiff did not do so. Plaintiff was transferred to another correctional Institution in mid-December and could have made a more timely report of the assault if he had truly been afraid for his safety. That did not happen either.

Plaintiff was warned that he has the burden of proof, and may not rest on the allegations of the complaint to avoid summary judgment in Defendant's favor. As noted earlier, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).

Plaintiff has provided evidence from inmate Tracy Freeman that Officer Tama Mason said to Plaintiff that her husband would "straighten him out" when he got to K-dormitory. This, standing alone, does not prove that an assault by Officer Samuel Mason actually took place. The only witness to such an assault is Plaintiff himself, and he has declined to file an affidavit, under oath, setting forth all of the specifics of his own eye witness evidence.

Accordingly, it is **RECOMMENDED** that Defendant's summary judgment motion, docs. 54 and 56, be **GRANTED** and judgment entered in favor of the Defendant on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on August 8, 2006.

       s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:04cv168-WS/WCS